## Commonwealth *ex rel.* Barr *versus* Naylor.

The sale of liquors, on Sunday, by a licensed inn-keeper, is not an indictable offence, under the Acts of 11th March 1834, and 16th April 1849.

The only penalty incurred by such an act, is that imposed by the Act of 1794, forbidding worldly employment on the Lord's-day.

The Act of 1794 does not repeal or take away the inn-keeper's license; but qualifies, limits, and restrains it. If a traveller come to an inn-keeper, on Sunday, he is bound to receive him, and afford him rest and refreshment; though he may not sell him liquor.

The Act of 1794 having provided a penalty for the performance of worldly employment on Sunday, and pointed out the mode of enforcing it, no indictment will lie for the offence. This is prohibited by the Act of 1806.

HABEAS CORPUS before the Court in *banc.**

This was a writ of *habeas corpus* issued at the relation of Daniel Barr against Mason Naylor, a constable, returnable before the Supreme Court in *banc*. It was heard before Justices LEWIS, WOODWARD, and KNOX.

The facts are fully stated in the opinion of the court.

*H. M. Phillips* and *Meredith*, with whom was *D. Webster*, for the relator.

*Mann*, assistant district attorney, appeared, but declined taking any part on behalf of the Commonwealth.

The opinion of the court was delivered by

WOODWARD, J.—This case came up for hearing before the Supreme Court, on the return of a *habeas corpus*. On full proof of notice to the district attorney, the court proceeded to inquire into the cause of the detainer.

Daniel Barr, a regularly-licensed inn-keeper in the city of Philadelphia, was arrested on the charge of keeping a tippling and disorderly house, was held to bail by the mayor to appear and answer at the Quarter Sessions, and having afterwards been surrendered into custody by his bail, he obtained this writ of *habeas corpus*, on return of which, it appears that the alleged offence consisted in selling spirituous liquors to several persons at one time, on Sunday, June 18th 1854, at the bar of his tavern. The

---

* This case was decided at Philadelphia, in July 1854, but in consequence of the passage of the Act 26th February 1855, providing a punishment for the sale of liquors on Sunday, it was omitted from the reports of that period; inasmuch, however, as it has been recently cited and relied on as a precedent of great importance in analogous cases, the reporter deemed it his duty to present it to the profession in its present form.

[Commonwealth *ex rel.* Barr *v.* Naylor.]

proof is clear, that the act was attended with no noise or disorder whatever.

The question presented is, whether a sale of liquors on Sunday by a licensed inn-keeper is an indictable offence. If it is, Barr is properly in custody—if it is not, he is detained without authority of law, and must be discharged.

By the 25th section of the Act of March 11th 1834, "if any person shall sell less than one quart of spirituous or vinous liquors, to be delivered at one time to one or more persons, *without having first obtained a license agreeably to law for that purpose,* such person shall be liable to indictment, and on conviction thereof, shall forfeit and pay for every such offence a sum not exceeding one hundred dollars." The 4th section of the Act of March 20th 1849, fixes the minimum of the penalty at twenty dollars.

The Act of the 16th of April 1849, prescribes the form and graduates the price of licenses in the city and county of Philadelphia; and the 14th section subjects any person who shall sell spirituous or vinous liquor by a less measure than a quart, or malt liquors by a less measure than a gallon, without a license, or after his license has expired, to a penalty of fifty dollars for every day he shall so sell, one half to the use of the Commonwealth, the other half to the prosecutor; and the 8th section of the Act of the 25th March 1850, makes the offender liable also to indictment as for a tippling-house. The offence against the revenue is punished by the *qui tam* prosecution for the above penalty of fifty dollars, the tippling-house by indictment in the Quarter Sessions.

It will be observed, that the indictable offence, under the Act of 1834, consists in selling liquor without *first having obtained a license agreeably to law for that purpose;* and under the Act of 1849, for selling without a license, or after it has expired. Such is the statutory definition of a tippling-house, and the indictments used in the Quarter Sessions are framed necessarily on these words of the statutes. The proof must, of course, sustain the indictment, or there can be no conviction.

The question is, then, was Barr "without a license" on the 18th June 1854. It is in proof before us, that on the 9th of May 1854, he obtained a license in the form prescribed by the statute, for which he paid the stipulated price, $50, and which will expire by its own limitation on the 1st day of May 1855. We can no more say, in view of this fact, that he was "without a license" on the 18th June, than that it had expired before that date. Without resorting to the general principle, that penal statutes, where they act on the offender, are to be strictly construed—giving to these Acts of Assembly the most loose construction of which they are susceptible, it is impossible for us to decide that a man is within their meaning, who holds a license issued in due form of law and not yet expired. To convict and punish a man for not having

[Commonwealth *ex rel.* Barr *v.* Naylor.]

obtained such a document, when he has obtained it, possesses, pleads, and produces it, would offend common sense as well as legal justice.

But does the license authorize the holder to sell liquor on Sunday? Certainly not; because the Act of Assembly of 1794 forbids any worldly employment, with certain exceptions, on Sunday, under a penalty of $4; and that this act is not displaced or repealed by the Acts of 1834 and 1849, for licensing inns, was very distinctly decided in the case of Omit *v.* Commonwealth, 9 *Harris* 426. That decision is said to have given rise to this prosecution, but there is nothing in the opinion delivered in that case which warrants the idea, that a breach of the Sabbath is indictable in the Quarter Sessions. That was a summary proceeding before a justice of the peace, under the Act of 1794, and the precise point was ruled in these words :—" that licensed inn-keepers have the right to sell liquor six days in the week, but that it is worldly employment or business within the prohibition of the Act of 1794, not a work of charity or necessity falling within the proviso of the act, and therefore not lawful to be done on Sunday." To that opinion we steadfastly adhere, and it is decisive against the licensed inn-keeper's right to traffic in liquor on Sunday; but the penalty of disobedience is not that prescribed by subsequent statutes for *tippling-houses*, but that which the Act of 1794 denounces against *worldly employment on the Lord's-day*. The two offences are distinct in definition and character—in the process of conviction and in the penalties—and you can no more visit the offence of worldly employment on Sunday with the penalties against tippling-houses, than you can punish tippling-houses, by process of indictment, with the penalty annexed to a breach of the Sabbath. The idea of taking the *offence* from one statute, and the *penalty* from another, or rather of punishing the statutory offence in the manner prescribed for a totally different one, is as illogical as it is illegal. Each offence and its penalty stand in the relation of cause and effect, and to confound them is against reason. It is against law, too; for we have a rule prescribed by statute, that "in all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any Act or Acts of Assembly of this Commonwealth, the directions of the said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect." Accordingly, it was held in Commonwealth *v.* Evans, 13 *S. & R.* 426, that an indictment at common law for extortion does not lie against a magistrate for taking illegal fees, an Act of Assembly having prescribed a penalty of fifty dollars for the offence. And in Hellings *v.* The Commonwealth, 5 *R.* 64, it was decided, that the remedy against a tax-collector, for embezzling

[Commonwealth *ex rel.* Barr *v.* Naylor.]

moneys, was by the special proceedings provided by an old Act of Assembly, which had supplanted the indictment at common law.

Now, by the Act of 1794, a remedy is provided for Sabbath-breaking, and the mode of enforcing the penalty is pointed out. It is by what is called a summary conviction, which is much more expeditious, and far less expensive to the public, than trial by indictment. The penalty, instead of being discretionary with the court between certain limits, and imposed and executed by way of sentence, as in convictions for tippling-houses, is fixed, and is leviable by distress of the offender's goods and chattels. It is true, the penalty for keeping a tippling-house is statutory, but the process of conviction is not. That is according to the common law. And because a different process is prescribed for Sabbath-breaking, nothing is to be " done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying" the Act of 1794 into effect.

It would be easy to point out many mischievous consequences likely to result from admitting the principle on which this prosecution is founded; but, seeing that it is excluded and forbidden by a statutory rule which we dare not disregard, it need not be further discussed. When we decided in Omit's case that the innkeeper's license gave him no right to sell liquor on Sunday, we did not say, nor mean to be understood, that his license was abrogated and made void on Sunday, so that he could be said to be *without* a license. It exists, and imposes duties and obligations on the holder, though some of its faculties and privileges are suspended. If a traveller come to an inn-keeper on Sunday, he is bound to receive him and afford him rest and refreshment, though he may not sell him liquor. Inns are designed for public convenience, as places of rest for the stranger and traveller, and as such may be used on Sunday, without violation of the Act of 1794; but as places for selling liquor on that day, they are forbidden both by the letter and the spirit of that enactment. It does not repeal or take away the license, but qualifies, limits, and restrains it. The clear announcement of this rule ought to be sufficient to stop the traffic. When a legislative enactment is declared by the supreme judicial authority of the state to limit the liquor traffic, under a license, to the six secular days of the week, those citizens to whom the law has intrusted licenses for public reasons, ought to yield a cheerful obedience. Whatever abstract opinions they may entertain in reference to the sacredness of Sunday, they know that it is a religious institution held in high reverence by great numbers of their fellow-citizens—that it is a civil institution which the state has always cherished—and that a wanton disregard of the legal provisions for its observance

insults the law, and provokes to more stringent enactments and a more vigorous administration. No man can successfully set himself in opposition to the law. And in this country, where suffrage is universal and statute law an expression of the will of the majority of citizens, he who resists it, not by constitutional efforts for its repeal or modification, but by evasive practices or shameless disregard, is false to the first great principle of republican government—the right of the majority to rule. And if he is a public servant, to whom the law has intrusted special immunities and privileges, his disobedience wears the stamp of peculiar turpitude.

Considerations like these ought to incline licensed inn-keepers, as faithful men and good citizens, to suspend the sale of liquor on Sunday, for the public sense, as well as the law of the land, are against it; but if they will not, if they will yield to nothing but power, the law is strong enough to vindicate itself. It is certain that a faithful and energetic enforcement of the Act of 1794, by the local magistracy and police, may do much to restrain ill-disposed inn-keepers from this form of Sabbath desecration. And as the persons who most resort to taverns on Sunday, and cause most annoyance to the community, are those of known intemperate habits, persons already intoxicated, and minors, it would be well for inn-keepers to take notice of the provisions of the Act of 8th May 1854, against furnishing such persons with intoxicating drinks. Wilfully furnishing them to such persons on any day of the week, by sale, gift, or otherwise, is made by the first section of this act a misdemeanour, punishable by fine and imprisonment; and by the third section, " any person furnishing intoxicating drinks to any other person, in violation of *any existing law*, or of this act, shall be held civilly responsible for any injury to person or property in consequence of such furnishing"— a provision which may bring on the inn-keeper who disregards the Act of 1794 very serious pecuniary responsibilities.

The legislature have not left the community without the means of self-protection from the admitted and felt evils of Sunday intemperance, and that without distorting legal rules of construction and procedure, as we should be obliged to do to sustain the present prosecution. Society has a deep stake in the maintenance of Sunday and in the suppression of all worldly employment, and especially of tippling and intemperance, on that day ; and to a faithful administration of the means furnished for these ends, it is our duty, as it shall always be our inclination, to lend our sanction ; but we cannot, even for objections so meritorious, sustain a misapplication of remedies which would introduce confusion into the administration of the criminal law, punish the citizen unjustly, and by its influence as a precedent afflict the community with worse evils than those sought to be redressed.

[Commonwealth *ex rel.* Barr *v.* Naylor.]

We are of opinion that Daniel Barr is not liable to indictment in the Quarter Sessions for the offence alleged, and therefore direct him to be discharged.

Relator discharged.