## Commonwealth *v.* Foster, Appellant.

*Criminal law—Security for good behavior—Sunday law—Prior convictions.*
The court of quarter sessions has no power to require a person to give security to be of good behavior, who has several times been convicted of doing business on Sunday in violation of the act of 1794, in the absence of any allegation or evidence that such business was done in such a manner as to disturb the peace or constitute a public nuisance.

Argued Nov. 25, 1904. Appeal, No. 216, Oct. T., 1904, by defendant, from order of Q. S. Delaware Co., Sept. T., 1904, refusing surety for good behavior in case of Commonwealth

400, (1905).]     Statement of Facts—Opinion of the Court.

v. Addison Foster. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.    Reversed.

Trespass from justice of the peace.
The facts appear by the opinion of the Superior Court.

*Error assigned* was order of the court.

*Albert J. Williams*, for appellant.

*A. B. Geary*, with him *Josiah Smith*, district attorney, for appellee.

OPINION BY PORTER, J., July 13, 1905 :

This proceeding had its inception in a complaint, verified by affidavit, presented to a justice of the peace, " charging the defendant with having violated the act of assembly approved April 22, 1794, 3 Sm. L. 177 for many Sundays by doing and performing worldly employment or business on the first day of the week designated in the act of assembly as ' The Lord's Day,' commonly called Sunday, in carrying on his business as a dealer in cigars and soft drinks, and selling cigars, tobacco and other articles of merchandise.    The said Addison Foster has been convicted of doing and performing said worldly employment and business many times, but notwithstanding such convictions he has continued to do and perform the said worldly employment or business on the day commonly called ' The Lord's Day ' and the affiant has reason to fear and believe, and does believe that the said Addison Foster will continue to violate the said act of assembly unless he be bound over to be of good behavior and appear according to law."    The complainant asked that a warrant be issued, and the writ was issued by the justice. The justice of the peace after a hearing required the defendant to enter into a recognizance with surety conditioned that he appear at the next court of quarter sessions, and in the interim keep the peace.    The transcript having been duly returned to the court of quarter sessions, the learned judge of that court after argument by counsel, there being no dispute as to the facts, ordered the defendant to enter into his own recognizance in the sum of $500 for his good behavior and stand committed until this sentence was complied with.    The defend-

ant declined to enter into the recognizance so ordered, and took this appeal.

The facts agreed upon are set forth in the record of the proceeding before the justice of the peace, and lie within a very narrow compass. The defendant had several times between June and September, 1904, been convicted of doing worldly business on Sunday, and had upon each occasion paid the forfeit or fine to which he became liable under the provisions of the act of 1794. The business was not conducted in such a way as to involve a breach of the peace or constitute a nuisance. The allegation of the prosecutor in his complaint was that the defendant had many times been convicted under the statute, and the ground upon which he asks that the defendant be bound over to be of good behavior, is that he, the prosecutor, fears the defendant will continue to violate the statute. The declared purpose of the proceeding was to restrain the defendant from selling cigars on Sunday, by requiring him to give a bond which would be forfeited by such selling in the future. Had the record contained any allegation that the acts of the defendant had been accompanied by any disturbance of the peace, or that the manner in which the sales were made constituted a public nuisance, a question would have been presented which does not arise in this case. The question here presented is does the the court of quarter sessions have power to require a person to give security to be of good behavior, who has several times been convicted of doing business on Sunday in violation of the act of 1794, in the absence of any allegation or evidence that such business was done in such a manner as to disturb the peace or constitute a public nuisance?

The opinion filed by the learned judge of the court below would lead to the conclusion that one who repeatedly transgresses any police regulation, established by statute or municipal ordinance, and upon each occasion pays the fine or penalty imposed by the act or ordinance, is a practical danger to society and comes within the class of those whom it is the duty of the court to hold for good behavior. If the fear that the violation of a mere police regulation, which involves no annoyance or danger to persons or property nor infraction of the public peace nor the commission of a felony or misdemeanor, is such a menace to the public welfare as to make it the duty of the court to re-

quire him to give security to be of good behavior, it would seem to necessarily follow that a subsequent violation of the same police regulation would work a forfeiture of the bond. This would result in vesting in the courts the power to increase the penalty fixed for the violation by the law-making authority which created the regulation.

There was no criminal or other charge pending before the justice of the peace or in the court of quarter sessions at the time this proceeding was instituted, and it cannot be treated as an incident of a jurisdiction acquired over the person of the defendant by virtue of some past or pending proceeding in which he was charged with the commission of a felony or misdemeanor. The record does not show that either this particular justice of the peace or the court of quarter sessions had ever had jurisdiction of this defendant in any previous criminal proceeding, of any kind or nature. Had the defendant been convicted of some felony the court might have required surety for his good behavior, as a part of the judgment, or if upon the trial of such an indictment the jury had acquitted him against manifest evidence, the court might have required him to give surety for his good behavior, as a condition precedent to his discharge; the order in either case would have been the exercise of a power incident to courts of record by the common law: Commonwealth v. Duane, 1 Binney, 99; Respublica v. Donagan, 2 Yeates, 437; Bamber v. Commonwealth, 10 Pa. 339; Hawkins P. C. book 2, chap. 47, sec. 11. But this defendant had not even been charged with an indictable offense, and the order from which he appeals has no foundation in the common-law jurisdiction of the court.

"Surety for good behavior may be considered in two points of view. It is either required after conviction of some indictable offense, in which case it forms part of the judgment of the court, and is founded on a power incident to courts of record by the common law, or it is demanded by judges or justices of the peace out of court, before the trial of the person charged with an offense, in pursuance of an authority derived from a statute, made in the 34th year of Edward III.:" Commonwealth v. Duane, 1 Binney 99. It is only this last kind of surety we are now to consider.

The statute 34th Edward III., c. 1, authorizes justices of the

peace " to take of all them that .be not of good fame, where they shall be found, sufficient surety and mainprize of their good behavior towards the king, and his people . . . . to the intent that the people be not by such rioters or rebels troubled nor endamaged, nor the peace blemished, nor merchants, nor others passing by the highways of the realm disturbed, nor put in the peril which may happen of such offenders." The natural meaning of the words persons not of good fame seems to be, those who by their general evil course and habits of life had acquired a bad reputation, and were supposed to be dangerous to the community. In process of time, however, the construction of these expressions has been extended far beyond their original meaning, and persons are now commonly held to find surety for their good behavior, who are not generally of ill-fame, but have only been charged with some particular offense. Chief Justice TILGHMAN in Commonwealth v. Duane, recognizing the existence of the power in justices of the peace and the danger incident to its unlimited exercise, said: " Surety for good behavior is more extensive in its nature than surety for the peace, and may be more easily forfeited, and therefore should be exacted with greater caution." Under the general words of the statute it has been held that " a man may be bound to his good behavior for causes of scandal, contra bonos mores, as well as contra pacem ; as, for haunting bawdyhouses with women of bad fame, or for keeping such women in one's own house ; or for words tending to scandalize the government or abuse of the officers of justice, especially in the execution of their office. Thus also a justice may bind over all night-walkers ; eavesdroppers ; and such as keep suspicious company : " Blackstone's Comm., book iv., 256. The justice of the peace is vested with " a discretionary power to take such surety of all those whom he shall have just cause to suspect to be dangerous, quarrelsome, or scandalous, as of those who sleep in the day, and go abroad in the night, and of such as keep suspicious company, and of such as are generally suspected to be robbers, and of eavesdroppers, and common drunkards and all other persons, whose misbehavior may reasonably be intended to bring them within the meaning of the statute, as persons of evil fame, who, being described by an expression of so great latitude, seem in a great measure to be left to the judg-

ment of the magistrate.   But if he commit one for want of sureties, he must show the cause with convenient certainty: " Hawkins' P. C., book 1, chap. 28, page 486 ; Rudyard's Case, 2 Ventris, 22.

The discretion with which the justice is invested is not, however, an arbitrary one, but is to be exercised according to the law of the land.   The act of 1794, which this defendant had violated, did not make the doing of worldly employment on Sunday an indictable offense, it is neither a felony nor a misdemeanor.   " The act sets apart the first day of the week, or Sunday, as a day of legalized rest, and enforces the observance thereof by legal sanctions, and is, essentially, but a civil regulation made for the government of man as a member of society : " Specht v. Commonwealth, 8 Pa. 312.   The mere doing of worldly employment on Sunday will not amount to a breach of the peace, where the work done is without noise or disorder : Commonwealth v. Eyre, 1 S. & R. 347 ; Commonwealth v. Teamann, 1 Philadelphia, 460.   " It certainly cannot be contended that every violation of that statute is necessarily a breach of the peace.   Work noiselessly and quietly done may disturb no one, and still the performer of it, if proceeded against, may have to pay the penalty, but would be answerable no further . . . . when worldly employment is so carried on as to disturb the peace and quiet of a community on Sunday, such circumstances constitute a breach of the public peace: " Commonwealth v. Jeandell, 2 Grant, 506.   The penal law to prevent worldly employment on Sunday has provided machinery for punishing it, and to it the violation must be referred : Sparhawk v. Union Passenger Railway Co., 54 Pa. 401 ; Commonwealth ex rel Barr v. Naylor, 34 Pa. 86.   The defendant had several times been convicted of doing worldly employment on Sunday, had on each occasion paid his fine, and the several proceedings were at an end.   This did not establish, nor was it in itself evidence, that he had been guilty of any breach of the peace, or disturbed the rest of any citizen.   Had the employment been carried on in such a way as to involve discomfort or annoyance to others, the courts of the commonwealth were open for the prosecution of the defendant.   This record does not show that any complaint had ever been made against him upon that ground, and it must therefore be assumed that

this defendant never had been guilty of any violation or disturbance of the public peace, or private rights of individuals.

The discretion with which a justice of the peace is vested in a proceeding for surety for good behavior, upon the ground that the defendant is not of good fame, is to be exercised, and only exercised, for the purposes contemplated by the statute from which he derives his authority; "To the intent that the people be not troubled nor endangered nor the peace blemished nor merchants nor others passing by the highways of the state disturbed, nor put in peril which may happen of such offenders." The learned judge of the court below was of opinion that when one repeatedly did any act forbidden by law and upon each occasion paid the penalty imposed by law for the violation, it was "offensive to the moral and religious sense of the community, as well as an insult to the law" and so came within the class of those whom it is the duty of the court to hold for good behavior. The sentiment involved is one which if universally accepted would undoubtedly lead to the development of the highest type of citizenship. This however is entirely apart from the purpose of the statute of 34th Edward III., which was to protect the state and people against certain well-recognized evils. A man may be a very bad citizen who repeatedly uses an unlicensed vehicle upon the streets of a city in violation of a law or ordinance, but he is not the kind of offender which the statute of 34th Edward III., c. 1 commits to the tender mercies of a justice of the peace and subjects to the burden and inconvenience of giving surety for his good behavior in an amount to be determined in the discretion of the justice. This record contains nothing from which it could be inferred that there was any reasonable ground to apprehend, or that this justice of the peace apprehended, that this defendant would commit any felony or misdemeanor, or disturb the peace, or in any way trouble, disturb or injure any of the people of the state, in their persons or property. The complaint which was at the foundation of the proceeding discloses that the purpose for which it was instituted was entirely foreign to that of the statute from which the justice of the peace derived his authority.

The order of the court below is reversed and the defendant is discharged.