## Commonwealth ex rel. *v.* American Baseball Club of Philadelphia, Appellant.

*Sunday law — Business — Worldly employment — Professional baseball—Act of April 22, 1794, 3 Sm. L. 177.*

1. The playing of baseball on Sunday for profit by a professional club, is a "worldly employment" and a "business" within the meaning of the Sunday Act of April 22, 1794, 3 Sm. L. 177.

2. A person may be guilty of carrying on a worldly employment on Sunday in violation of the Act of 1794, although he conducts it without noise, annoyance to neighbors, breach of the peace, or interference with religious worship.

*Constitutional law—Uncertainty—Act of April 22, 1794, 3 Sm. L. 177.*

3. The Act of April 22, 1794, 3 Sm. L. 177, forbidding business or worldly employment on Sunday, is not unconstitutional for uncertainty.

*Quo warranto—Sunday law violation—Remedies—Penalty—Act of April 22, 1794, 3 Sm. L. 177—Corporations—Franchises.*

4. Quo warranto, on the suggestion of the attorney general, is a proper remedy to prevent an incorporated baseball club from playing baseball on Sunday for profit in violation of the Act of April 22, 1794, 3 Sm. L. 177.

5. A fine of four dollars provided as a penalty by the Act of 1794, for violation of the act, is not the sole penalty where a corporation is the guilty party.

6. A corporation may be ousted by quo warranto from the exercise of powers not granted and powers forbidden to be exercised.

7. The fact that a corporation is chartered for the purpose of playing baseball for profit, does not give it the power or franchise of playing ball on Sunday in violation of the criminal laws of the Commonwealth.

8. That it is not forbidden to do so by its charter, is immaterial.

9. There is no implied power in a corporation to violate an Act of Assembly.

10. A judgment in quo warranto proceedings to restrain a corporation from the exercise of an alleged right which it does not possess, is not a sentence of corporate death.

Mr. Chief Justice MOSCHZISKER and Mr. Justice KEPHART dissented on the ground that quo warranto was not a proper remedy.

Argued April 12, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 13, May T., 1927, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket 1926, No. 69, awarding writ of quo warranto, in case of Commonwealth ex rel. George W. Woodruff, Attorney General, v. American Baseball Club of Philadelphia. Affirmed.

Petition for writ of quo warranto. Before HARGEST, P. J.

The opinion of the Supreme Court states the facts.

Judgment for Commonwealth. Defendant appealed.

*Error assigned,* inter alia, was judgment, quoting record.

*John R. Geyer,* with him *Charles G. Gartling* and *Paul G. Smith,* for appellant.—Quo warranto will not lie for the enforcement of the Sunday Law of 1794.

Appellant has the express power granted to it to play professional baseball and nowhere in the act of its incorporation, or in its charter, is it prohibited from conducting this undertaking on Sunday.

The sentence of corporate death cannot be imposed for minor infractions which do not go to the essence of the corporate franchise nor inflict injury upon the public: Com. v. Bridge Co., 216 Pa. 108; Com. v. Bank, 28 Pa. 383; Com. v. Bridge Co., 20 Pa. 185; Com. v. R. R., 58 Pa. 26.

If the writ would lie in the instant case then any manufacturing corporation might suffer corporate death, in whole or in part, because it did not equip its factory with fire escapes as provided by law; a mercantile corporation might lose its charter because it worked its employees over time; and a taxi-cab company might

have judgment of ouster entered against it, if one or more of its drivers violated the speed laws or any other provision mala prohibita. In fact, every corporation could be subjected to a forfeiture of its charter for violations by its agents or employees.

The Sunday Law of 1794 provides the sole penalty for its violation: Com. v. Wilkins, 271 Pa. 523; Com. v. Foster, 28 Pa. Superior Ct. 400; Phila., W. & B. Ry. v. Phila., etc., Co., 64 U. S. 209.

The playing of professional baseball on Sunday with or without an admission charge, is not a violation of the Act of 1794, unless it disturbs or interrupts the religious worship of the community: Com. v. Nesbit, 34 Pa. 398; Com. v. Junkin, 170 Pa. 194; Com. v. Reyburg, 122 Pa. 299; Foster's Petition, 243 Pa. 92; Johnston v. Com., 22 Pa. 102.

If the interpretation of the Act of 1794, as contended for by the Commonwealth, is adopted, it renders the entire act unconstitutional.

*John Robert Jones,* Special Counsel, with him *Thomas J. Baldrige,* Attorney General, for Commonwealth, appellee.—That quo warranto will lie to oust a corporation from the exercise of powers not granted to it is settled law: Com. v. Canal Co., 43 Pa. 295; Com. v. Mut. Aid Union, 7 Dauphin Co. R. 312; Com. v. Phila. Inquirer, 15 Pa. C. C. R. 463.

Appellant is a private business corporation, authorized to engage in a business the proceeds of which enure to the benefit of its stockholders.

The powers granted by, and the purpose stated in, the charter must conform to the legislation authorizing the creation of the corporation: Bly v. White Deer Mt. Water Co., 197 Pa. 92; C. & S. Line Ry. v. Markleton H. Co., 247 Pa. 565; Bank of Penna. v. Com., 19 Pa. 144; Stormfeltz v. Turnpike Co., 13 Pa. 555.

There is no power to violate an Act of Assembly: Pittsburgh Rys. v. Pittsburgh, 226 Pa. 498; Bly v. Water Co., 197 Pa. 80.

Though appellant has the powers claimed by it and the right to exercise them on week-days, it can have no right to exercise such powers on Sundays: Johnston v. Com., 22 Pa. 102.

The question of playing baseball on Sunday has been the subject of judicial inquiry in this State as the following cases establish: Com. v. Coleman, 66 Pa. Superior Ct. 380; Com. v. Rapp, 23 Pa. Dist. R. 145; Com. v. Egler, 43 Pa. C. C. R. 90.

The violation of the Sabbath is a crime which deserves punishment: Com. v. Eyre, 1 S. & R. 347; Com. v. Teamann, 1 Phila. 460; Com. v. Foster, 28 Pa. Superior Ct. 400; Com. v. Jeandell, 2 Grant (Pa.) 506.

An act lawful on week-days may be unlawful on Sundays: Com. v. Waldman, 140 Pa. 89.

The Act of 1794 is constitutional: Pittsburgh Rys. Co. v. Pittsburgh, 226 Pa. 498; Com. v. Wolf, 3 S. & R. 48; Specht v. Com., 8 Pa. 312; Com. v. Rapp, 23 Pa. Dist. R. 145; Hennington v. Georgia, 163 U. S. 299.

The procedure prescribed and the penalty imposed by the Act of 1794, is not exclusive: Kenton v. Rys., 54 Pa. 452; Com. v. Boulos, 35 Pa. Superior Ct. 102.

OPINION BY MR. JUSTICE SCHAFFER, June 25, 1927:

Defendant, a corporation of the second class and therefore organized for profit, was incorporated under the General Act of April 29, 1874, P. L. 73, and its supplements, for the purpose of organizing and maintaining a team or club for the playing of baseball. It holds a franchise as a member of the American League of professional baseball clubs and owns a baseball park known as Shibe Park, situated in the City of Philadelphia. All its players are paid and it charges the public an admission fee to see the games. In the summer of 1926, ap-

pellant announced that it intended playing professional baseball at its parks on Sundays, and on Sunday, August 22d, it did play a game of professional ball with another team of the American League, to which the public was admitted on payment of an admission fee. Thereafter the attorney general in behalf of the Commonwealth filed the suggestion for the writ of quo warranto in this proceeding, his averment being that the playing of the game of baseball on Sunday violates the Act of April 22, 1794, 3 Smith's Laws 177, and that appellant is without power or authority of law, under the letters patent granted to it, to play baseball on Sunday. The answer of defendant denied that the playing of baseball on Sunday is a violation of the Act of 1794 or that it is without authority to play the game on that day and averred that the writ of quo warranto would not lie against it because the sole penalty for its so doing is the payment of the sum of four dollars as provided in the act. The attorney general having demurred to the answer, the court below after hearing sustained the demurrer and entered a judgment that defendant be ousted from any right, privilege or authority to maintain or conduct upon its grounds any game of professional baseball on Sunday and directed that a perpetual injunction issue restraining it from so doing; from the judgment and decree thus entered defendant brings to us this appeal.

The questions we are asked to pass upon may be thus summarized: (1) Is the playing of professional baseball on Sunday as defendant played it a violation of the Act of 1794? (2) Is the act unconstitutional for uncertainty? (3) Is quo warranto the proper remedy and the judgment entered a proper one?

As to the first and main question we fail to see how, when the language of the act is called to mind and account is taken of what defendant is and what it actually did, it can be affirmed that the statute was not violated. To hold otherwise would mean that words do not have

their ordinary meaning. The statute says "If any person shall do or perform any worldly employment or business whatsoever on the Lord's Day, commonly called Sunday, works of necessity and charity only excepted ......and be convicted thereof, every such person so offending shall, for every such offense, forfeit and pay four dollars, to be levied by distress; or in case he or she shall refuse or neglect to pay the said sum......he or she shall suffer six days imprisonment in the house of correction of the proper county." The word "worldly" as here used means "concerned with the enjoyments of this present existence, secular," "not religious, spiritual or holy." Chief Justice Lowrie, speaking for the court in Com. v. Nesbit, 34 Pa. 398, 409, said: "Very evidently, worldly is contrasted with religious, and the worldly employments are prohibited for the sake of the religious ones." We cannot imagine in this sense anything more worldly or unreligious in the way of employment than the playing of professional baseball as it is played today. It is not only worldly employment which is forbidden, but business. There are businesses which are not trade or commerce: Hooper v. California, 155 U. S. 648. Can any one hope to successfully contend that today's professional baseball enterprises are not business? It was taken for granted by the Supreme Court of the United States that they are. "The business is giving exhibitions of baseball": National League v. Federal Baseball Club, 259 U. S. 200. We think no one would argue that conducting a circus is not a business or running a theater is not and yet there is no difference between them and playing professional baseball. In all three the participants are hired to give the exhibition and the public is admitted for a price. Pertinent to this line of thought is what was said by Mr. Justice Strong in Sparhawk v. Union Passenger Ry. Co., 54 Pa. 401, 409, "Many might be found, doubtless, who would affirm on oath that theatrical representations are conducive to mental and bodily health, and that such recreation as

they afford is a necessity. Such a construction of the statute would make it but an empty sound. It would be losing sight entirely of the objects sought to be secured, the observance of a day of rest for the community, thereby enabling every one to worship God according to the dictates of his conscience, without distraction, and without disturbance, and thus giving a check to vice and immorality. A construction that leads to such an absurdity must be erroneous."

The claim here made,—the right to play baseball on every day of the week notwithstanding the Act of 1794,—is the same that was made for the licensees of taverns in Omit v. Com., 21 Pa. 426, and in the opinion in that case completely answered. In Com. v. Naylor, 34 Pa. 86, the question presented was whether a sale of liquors on Sunday by a licensed innkeeper was an indictable offense, at that time there being no statute covering Sunday selling. In answering the query as to whether the license authorized its holder to sell liquor on Sunday, it was said (p. 88) : "Certainly not; because the Act of Assembly of 1794 forbids any worldly employment......on Sunday." It would be a difficult matter to state a satisfying reason why the sale of liquor on Sunday is a worldly employment and the sale of admission to see a baseball game is not. In that case the license from the Commonwealth gave the right to sell liquor; in the one at bar the charter the privilege of conducting games of ball, but neither privilege from the State can override its laws. This same principle is announced in Johnston v. Com., 22 Pa. 102. The Superior Court in Com. v. Coleman, 60 Pa. Superior Ct. 380, decided that the playing of professional baseball on Sunday was a violation of the Act of 1794, even though no admission be charged. Nothing brought to our attention leads us to otherwise conclude. In that case it was conceded that had an admission fee been charged it would have been a worldly employment.

Christianity is part of the common law of Pennsylvania (Updegraph v. Com., 11 S. & R. 393) and its people are christian people. Sunday is the holy day among christians. No one we think would contend that professional baseball partakes in any way of the nature of holiness and when contrasted with things which do, it is bound to be categoried as worldly. Great emphasis is laid upon the fact, in appellant's brief, that the baseball game was conducted without undue noise, that there were no disturbances, and altogether in a manner not to annoy in the slightest those living in the neighborhood of the ball park or to interfere with religious worship. It is not necessary that one, in carrying on a worldly employment on Sunday, should do any of these things before being guilty of a violation of the act, nor is it essential that there should have been a breach of the peace: Com. v. Foster, 28 Pa. Superior Ct. 400. Our conclusions must be that the defendant, a corporation existing for profit, in doing the acts against which the Commonwealth complains, was engaged in and performing a worldly employment and business on Sunday and therefore violating the Act of 1794.

On appellant's second proposition that the act is unconstitutional for uncertainty, we think very little is required to be said. See 37 Cyc. 541; 12 C. J. 1275. It has been on the statute books for 133 years and has been the subject of much judicial consideration. When its language is given its ordinary not a strained construction, its meaning we think is plain. It may be that those who do not wish to understand or abide by its provisions find them uncertain; surely those who wish to follow the custom of our people in Sunday observance do not so find the interdictions of the statute. We can see no basis whatever for the argument that the act violates the 14th Amendment to the federal Constitution.

This brings us to the third question presented by appellant, the one most stressed in oral argument and in printed brief: Is quo warranto the proper remedy and

the judgment entered a proper one? In passing upon this question, it is important at its threshold to consider who brought the proceeding. It was initiated by the attorney general, the chief law officer of the Commonwealth and necessarily has behind it the approval of the State's highest executive officer, the Governor. The people's mandate to him in their fundamental law (Constitution, article IV, section 2) is "The supreme executive power shall be vested in the Governor, who shall take care that the laws be faithfully executed." This proceeding was brought to the end that this mandate should be fulfilled.

Appellant does not contend that a corporation may not be ousted of all its franchises for wilful misuser. If it may be ousted from all of them, certainly it may be of part. A corporation may be ousted from the exercise of powers not granted and powers forbidden to be exercised (Act June 14, 1836, section 11, P. L. 621; 22 R. C. L. 672; High's Extraordinary Legal Remedies (3d ed.) sections 647, 648; Com. v. Delaware & Hudson Coal Co., 43 Pa. 295; Com. ex rel. v. Northeastern Elevated Ry. Co., 161 Pa. 409) and the way to oust it is by writ of quo warranto: Kishacoquillas Turnpike Road Co. v. McConaby, 16 S. & R. 140. It is especially the province of the attorney general to sue out such writ in cases of public wrong: Murphy v. Farmers' Bank of Schuylkill Co., 20 Pa. 415.

Appellant argues that its charter gives it express power to play baseball. This may be admitted and yet there be no denial of the right to the writ which is one of inquiry: By what warrant are the acts done of which complaint is made? It does not avail to say to the Commonwealth, you granted me the privilege to do this thing, if it appears that what is being done under cover of the charter is unlawful. If all that was being carried on was unlawful, then there would be no warrant for its doing and no question of the propriety of the writ; if part of what was being carried on was lawful

and part was not, then there would be warrant only for that which was lawful; what was unlawful, not being justified, would have to cease. It would seem to be well nigh ridiculous to hold that by its writ of quo warranto the Commonwealth may interdict that which is entirely unlawful but cannot lop off that part which is not within the law. The use of quo warranto to inquire into particular acts of private corporations alleged to be unlawful is adverted to in High's Extraordinary Legal Remedies, sections 677b and 677c. It was said in Com. v. Banks, 198 Pa. 397, that quo warranto would be a proper remedy to restrain a business school, not having authority to confer degrees, from unlawfully claiming to be a "university." It is argued that under its charter defendant has the express power granted to it to play professional baseball and nowhere therein is it prohibited from conducting this undertaking on Sunday. Neither was the innkeeper in the case heretofore cited prohibited in his license from selling liquor on Sunday, yet this court denied him the right. It would be an unthinkable proposition that the Commonwealth would create organizations to break its own laws. Every corporation which it calls into existence by letters patent takes its charter subject like natural persons to the rule of and obedience to law. Its charter is a grant of lawful privileges, not a warrant to violate any law. Violation of the Act of 1794 is a crime: Com. v. Eyre, 1 S. & R. 347; Com. v. Wolf, 3 S. & R. 48; Com. v. Smith, 266 Pa. 511; Com. v. Coleman Co., 60 Pa. Superior Ct. 380; Com. v. Shields, 50 Pa. Superior Ct. 194. "Whenever the attorney general shall have reason to believe...... that any corporation has......exercised any power, privilege or franchise, not granted or appertaining to such corporation, it shall be his duty to file......a suggestion [for a writ of quo warranto] and to proceed thereon for the determination of the matter": Act June 14, 1836, P. L. 621. We can think of no instance in which the attorney general can move with greater pro-

priety to fulfill his duty under this requirement than in such an instance as the one before us, where one of the State's creatures, a corporation of its creation, avows its right and power to nullify a criminal statute. If appellant's argument in this respect were to be upheld, then by the same token every merchandising corporation granted the privilege under its charter to sell its wares could open its doors for trade on Sunday and the day as it has been observed in the United States since the arrival of the first immigrants would be at an end and secular doings would be the same as on other days of the week. There is and could be no implied power in a corporation to violate an Act of Assembly. "The doctrine of implied powers is not to be stretched to permit that to be done by a corporation which the legislature has previously said shall not be done": Pittsburgh Rys. Co. v. Pittsburgh, 226 Pa. 498, 502. We said in Kenton v. Union Passenger Ry. Co., 54 Pa. 401, 454, that "The company's violation of the Sunday law can be redressed only by enforcing the statutory penalty, or by a proceeding on behalf of the Commonwealth against the company for misuse or abuse of their charter."

We agree, and have so announced, that courts should act with extreme caution in proceedings which have for their object the forfeiture of corporate franchises (Com. v. Monongahela Bridge Co., 216 Pa. 108) but it has been our policy from a very early date not to limit the use of quo warranto proceedings. "The remedy by quo warranto is by statute, and is special; and as the statute is remedial it is to be so construed and administered as to advance, that is, to render effective, the remedy. This is the rule of all remedial statutes": Com. v. Dillon, 61 Pa. 488, 490. See also, Com. ex rel. v. Stevens, 168 Pa. 582, 587, and High's Extraordinary Legal Remedies (3d ed.) section 622.

The argument that the Act of 1794 provides the sole penalty for its violation cannot be made in this proceeding where the Commonwealth itself through the attor-

ney general seeks to call one of its creatures to account. "There can be no doubt that a corporation may be proceeded against by quo warranto for a misuse or perversion of the franchise conferred upon it by the State, notwithstanding its officers and agents may at the same time be amenable to the criminal law for offense committed by them in the perversion of such franchise": State ex rel. Hadley v. Delmar Jockey Club, 200 Mo. 34, 92 S. W. 185; 9 A. L. R. 106.  Speaking through Mr. Justice SIMPSON, in Com. ex rel. v. Wilkins, 271 Pa. 523, we made it clear that a penalty provided in a penal statute for those who refuse to enforce it did not mean that that is the exclusive "remedy"; certainly it should not be that the presence in a penal statute of a penalty for individuals who break it should preclude the attorney general from proceeding against a corporation, not by way of imposing a penalty but with a view to prohibit the misuse of a franchise granted by the State.  We do not understand that anything said in Com. v. Smith, 266 Pa. 511, is at variance with this view; that was a proceeding in equity.

As to appellant's contention that "The sentence of corporate death cannot be imposed for minor infractions which do not go to the essence of the corporate franchise nor inflict injury upon the public generally," while we are not prepared to say there is no public injury by a wilful violation of a criminal law, it would seem that all necessary to be said is that the corporation is not under sentence to death; the court has ousted it only from any right, privilege or authority to maintain or conduct any game of professional baseball on Sunday.

The judgment and decree of the court below are affirmed at the cost of appellant.

DISSENTING OPINION BY MR. JUSTICE KEPHART, June 25, 1927:

I feel that it is my duty to record my dissent from the conclusion reached by the majority of the court on the

judgment about to be entered in this case. I place it on the ground that quo warranto is not the proper remedy in such a case, and, therefore, the court below was without power to enter the decree it did.

This is an unusual proceeding to compel obedience to a penal law. Quo warranto, the writ used for that purpose, is an extraordinary remedy, to be applied with extreme caution, and should never be allowed except under express statutory authority. This is the first instance where the writ has been used to enforce a criminal statute as far as the writer of this opinion is able to discover. When it is invoked to compel a corporation not to do certain acts, it should be granted only when the company fails to fulfill a major purpose for which it is organized (High on Extraordinary Leg. Rem. section 648; Com. v. Monongahela Co., 216 Pa. 108, 116), since the effect of the writ may be that corporations may, in effect, be put to death or have powers taken away. Therefore, it is imperative that the cause for the infliction of the death penalty in whole or in part should be one which the law considers as of a very serious nature: 14 A. Corpus Juris, p. 1107, section 3712.

But the writ is here successfully used to forfeit part of a corporate life for playing baseball on Sunday, the commission of that which the law looks on as a very minor offense compared with crimes generally, (Com. v. Commercial Bank, 28 Pa. 383) and for a single offense only. The game of baseball is a sport; when played on Sunday, it is not an indictable offense as a felony or misdemeanor, but is made illegal only by the Act of 1794, which is a civil police regulation. It is not wicked, in itself; it has no element of criminality, and the Act of 1794, relating to Sunday games, is simply and only a civil regulation for the government of the members of society: Specht v. Com., 8 Pa. 312.

All parties to this case have agreed that the game in question was played in an orderly manner; it did not

constitute a common or public nuisance. The commission of the offense did not interfere with the tranquility or peace of the neighborhood, or of those engaged in religious worship; nor did it harm or injure any person. A court of equity would not attempt by injunction what may, under the majority opinion, be done by quo warranto, unless the property of complainant or personal rights dependent thereon was injured by the act: Sparhawk v. The Union Passenger Ry. Co., 54 Pa. 401; Klein v. Livingston Club, 177 Pa. 224; Com. v. Smith, 266 Pa. 511. As the courts have always insisted that the misuse or abuse of corporate powers must be such as the law stigmatizes as being of a serious character in order to justify forfeiture of charters, the controlling principles governing the use of the writs against corporations should be the same as those governing the actions of a chancellor. In such cases, the mere fact that a crime was committed, and even repeatedly committed, does not afford ground for equitable relief: Com. v. Smith, 266 Pa. 511; Malone v. Gas Light Co., 182 Pa. 309; Klein v. Livingston Club, supra; Friedenborn v. Com., 113 Pa. 242; Sparhawk v. The Union Passenger Ry. Co., supra; Com. v. Foster, 28 Pa. Superior Ct. 400. See also McMillan v. Kuehnle, 78 N. J. Eq. 251, 78 Atl. 185; Barry v. State, 212 S. W. (Tex. Civ. App.) 304; Com. v. Ruh, 173 Ky. 771, 191 S. W. 498; World's Columbian Exposition v. U. S., 56 Fed. 654. Equitable powers embrace much more and are more elastic than those of quo warranto. This writ was never intended to suppress crime, correct minor misconduct or slight abuses of corporate life, and it has been held by this court that quo warranto will not lie where the relator has a private remedy: Com. v. Bridge Co., 20 Pa. 185. Without reviewing all of the authorities separately in this and other states, to me it is quite certain quo warranto should not lie for the causes here shown.

Appellee contends that the Act of 1794 prohibits playing baseball on Sunday. If this be true, then the club

could not play on Sunday without subjecting itself to the penalty of the act, four dollars for each offense. By these proceedings, an additional punishment is, in effect, added by judicial construction. A part of its corporate life is taken from it with a further penalty that if it does not desist, its charter will be revoked. Thus a new and different punishment, other than that which the legislature has deemed ample, is here provided for, not by law-makers, but by the courts.

By the Act of March 21, 1806, 4 Smith's Laws 332, where a statutory remedy is provided, it must be followed. The remedy under the Act of 1794 was by summary proceeding in a hearing before a magistrate, with the punishment fixed at four dollars for the offense. An individual, partnership, association, or joint stock company, is subject to no other penalty. The Act of 1806 means that the proceeding mentioned in the Act of 1794 is an exclusive remedy, and we so held in Com. v. Smith, supra. Com. v. Wilkins, 271 Pa. 523, so much relied on and cited in the majority opinion, was a petition for a mandamus to compel school directors to perform a public duty for the preservation of the health of the community. It was not quo warranto, and there is some distinction between mandamus and quo warranto. But even in that case, Mr. Justice SIMPSON states, in referring to remedy the Act of 1806, "For here [in the case then before the court] a remedy is [not] provided........ and no penalty [is to be] inflicted."

The act authorizing quo warranto did not, by its terms, include the present cause of action. The authority cited for the action is the 3d section of the Act of June 14, 1836, P. L. 621. But this gives authority to institute quo warranto only where the corporation proceeds "without lawful authority" or "exercises any power, privilege or franchise, not granted or appertaining to such corporation." The Attorney General's right to proceed is limited by the act. Appellant was organized and chartered to play baseball; this right ex-

tended to every day of its corporate life. The power to perform its corporate function is there, but playing on a particular day is penalized by the Act of 1794. If the legislature should see fit to remove the penalty, no new steps would be necessary to enable the club to play on Sunday. What appellant did was within its general corporate powers, but penalized by a civil regulation.

If the law of the majority opinion is to be followed, the Attorney General ought to institute proceedings against all corporate violators of the Sunday law, including railroad companies, trolley car companies, all taxicab companies and motor bus companies, which are identical in purpose with taxicab companies, and all carriers whose passengers are not on their way to church or religious service or who are travellers whom necessity or mercy compels to move, but who are pleasure seekers or engaged in a business journey.

Under the majority opinion, corporations that sell or print newspapers on Sunday, or for Monday delivery, ought to be proceeded against; telephone and telegraph companies, which furnish the news, should be included. Indeed, if this entirely new flexible remedy is to be upheld as the law, it becomes the open gateway for the punishment of all corporate violators of law, be it the Sunday law or other laws. Manufacturing establishments which do not properly guard machinery, the same concerns, or others, with large buildings, and hotel companies, not properly equipped with fire escapes, mercantile establishments, telephone companies and others that happen to employ labor illegally, or work them overtime; all may be proceeded against by quo warranto. In fact every corporation could be subjected to the forfeiture of its charter for violations of the laws by its agents or employees. This is the plain logic of the majority opinion.

It is my judgment the legislature never intended the writ of quo warranto to cover the cause for which it is here used. There is no reason for segregating the facts

of this case from the great mass of corporate violations and giving them preferential treatment, as I feel we shall be obliged to do in the future if we are to follow the decision of the majority and administer to other violators the same treatment as here meted out to appellant.

It is not necessary for me to express an opinion on the other branch of this case, as to whether playing baseball violates the Sunday Act of 1794; for, as I view it, the Commonwealth must be confined to the remedy there provided by the legislature. In my opinion, this case is controlled by Sparhawk v. The Union Passenger Ry. Co., supra, and Com. v. Smith, supra, and the judgment should be reversed.

DISSENTING OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, June 25, 1927:

While I agree with the majority of the court that the playing of professional baseball is a business, or worldly occupation, the performance of which, on Sundays, violates the Act of April 22, 1794, yet I cannot agree that quo warranto is a permissible remedy to deal with such a violation of law. The penalty and also the appropriate remedy are provided in distinct and unmistakable terms by the Act of 1794 itself. Under well established rules of law, these provisions are exclusive, whether the offender be a corporation or otherwise. In Com. v. Smith, 266 Pa. 511, 515, 516, the State, as here, endeavored to enforce the Act of 1794 in a manner other than provided by the statute. We refused to permit this to be done, my predecessor in office, Chief Justice BROWN, saying for a unanimous court, "If the playing of . . . . . . baseball on Sunday is a violation of [the statute] the players are punishable under it . . . . . . This proceeding is at the instance of the Commonwealth; the remedy for that of which it complains is to be found in the act . . . . . . If the penalty therein provided is not a sufficient deterrent, it is for the legislature to provide another . . . . . . The penal

law that is violated is provided with the machinery for punishing [transgressions against] it and to [this machinery] the violation must be referred." This was said by us in a case where one authorized to proceed in the name of the Commonwealth was the principal plaintiff, and I cannot construe it to mean else than that neither an equitable nor any other remedy except that named in the Act of 1794 is available to the Commonwealth for the enforcement of this statute.

The fact that defendant is a Pennsylvania corporation does not place it at the uncontrolled mercy of its creator. Except as affected by constitutional or express statutory provisions, the Commonwealth has like control over the social conduct of its individual citizens, officers of its corporations, including municipal officers, and the corporations themselves; but the courts should not permit it unwarrantably to coerce the conduct of one of them any more than of another. To my mind, the principle of Com. v. Smith (where the effort was to compel municipal corporate authorities to take a certain line of action), and the plain words in which our ruling is there expressed, mean, and in effect say, that the Commonwealth cannot by injunction in any form enforce the Act of 1794, but is confined for its enforcement to the penalty and remedy therein particularly provided.

For the reasons stated, and to the extent above indicated, I dissent.