## Dale, Trustee *versus* Knepp.

An agreement to subscribe for the erection of a church edifice is a work of charity within the meaning of the Act of April 22d 1794 (3 Sm. L. 177), and may therefore be enforced though made on Sunday.

June 15th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

[Dale *v.* Knepp.]

ERROR to the Court of Common Pleas of *Clearfield county:* Of May Term 1881, No. 178.

Debt, by Edmund Dale, trustee of Dale Church, against Benjamin Knepp, to recover $50, the amount of a subscription made by the defendant on Sunday towards the erection of the church building. Judgment was obtained before an alderman, and after appeal to the Common Pleas, the case was referred to arbitrators, who found for the plaintiff, from whose award an appeal was taken. Plea, nil debet.

On the trial, before ORVIS, A. L. J., the plaintiff's testimony showed the following facts: At one of the regular services at Dale Church, held on Sunday, November 23d 1873, subscriptions were solicited to pay for the church building, then in process of completion. Among others, Knepp, the defendant, subscribed $50. His name and amount were announced publicly and taken down by the clerk. The testimony showed that about two months or more prior to this time, while engaged in hauling lumber for the church, he had agreed with Dale, the trustee, that he would subscribe, but did not fix the amount. Also, he was called upon twice within a year after making the subscription and asked to pay the same. His reply the first time was that he was unable to pay so much, and could not afford to pay over half that amount. The second time he said he would be along in a few days and fix it. This claim, with others, was afterwards put in the hands of a justice for collection, when for the first time he disputed it, and denied that he had ever agreed to pay any sum.

At the close of the plaintiff's testimony, the defendant moved for a compulsory nonsuit, on the ground that the contract, having been made on Sunday, although for religious purposes, was invalid. The court granted the non suit and subsequently refused a motion to take it off. The defendant took this writ of error, assigning for error this action of the court.

*Murray* (*Gordon* with him), for the plaintiff in error.—If this contract is void, it must be so by the Act of April 22d 1794, prohibiting worldly employments on Sunday except works of necessity and charity, for at common law it was not void: Shuman *v.* Shuman, 3 Casey 90, 94. The subscription in this case was a work of charity within the exception to the act. The test is not merely the nature of the contract, but the circumstances under which it was made and the purpose in view: Commonwealth *v.* Nesbit, 10 Casey 403; Johnston *v.* Commonwealth, 10 Harris 111. Gifts for the promotion of religion, in whatever terms expressed, are charities, or, as defined by Mr. Binney in Vidal *v.* Girard's Executors, 2 Howard 128, and ap-

[Dale *v.* Knepp.]

proved by this court in Price *v.* Maxwell, 4 Casey 35, a charity is "whatever is given for the love of God, or for the love of your neighbor, in the catholic and universal sense—given from these motives and to these ends—free from the stain or taint of every consideration that is personal, private or selfish." See also Howse *v.* Chapman, 4 Vesey 542; Attorney-General *v.* Heelis, 2 Sim. & Stu. 67; Going *v.* Emery, 16 Pick 107. The precise question here raised has been recently expressly decided in the Supreme Court of Michigan, in which state the statute is quite as broad as our own, prohibiting under a penalty "any manner of labor, business or work, except only works of necessity and charity:" Allan *v.* Duffy, 9 Reporter, 646 (1880).

*Smith V. Wilson,* for the defendant in error.—The soliciting and receiving of subscriptions for church purposes on Sunday is a part of the secular worldly business of the church, which, we contend, is neither an act of necessity nor charity within the meaning of the Act of 1794. While it is common at Sunday services to take up collections, which are executed gifts, the custom of taking subscriptions on Sunday is almost entirely confined to the Methodist Episcopal Church. The Presbyterian, Lutheran, Protestant Episcopal and Moravian Churches appoint business days to attend to financial matters connected with the welfare of the church, such as receiving pew rents and subscriptions, paying salaries, &c. There is no distinction between a subscription and such other financial matters. The making of a promissory note or other executory contract on Sunday is void, and the mere fact that its object was connected with the temporal matters of the church cannot make it valid: Kepner *v.* Keefer, 6 Watts 231; Haydock *v.* Tracy, 3 W. & S. 507; Fox *v.* Mensch, Ibid. 444. Allan *v.* Duffy, cited on the other side, was decided under the Michigan statute and is not authority here. A different rule has been adopted in other states: Reynolds *v.* Stevenson, 4 Ind. 619; Finn *v.* Donahue, 35 Conn. 216; Pate *v.* Wright, 30 Ind. 476.

Mr. Justice MERCUR delivered the opinion of the court October 3d 1881.

This contention is, whether a subscription made on Sunday toward the erection of a church edifice is void?

A contract made on Sunday is not void at common law: Kepner *v.* Keefer, 6 Watts 231; Fox *v.* Mensch, 3 W. & S. 446; Shuman *v.* Shuman, 3 Casey 90. If then this contract is void it is by reason of the act of 22d April 1794. That Act declares "if any person shall do or perform any worldly employment or business whatsoever on the Lord's day commonly called Sunday, works of necessity and charity only excepted,"

and such other exceptions as are mentioned in the proviso, every person so offending shall be subject to a penalty as in the Act prescribed.

It may be conceded that the making of this subscription is not a work necessarily done on Sunday. The question then is whether the raising of money to build a house of worship, is a work of charity within the meaning of the Act, or is the solicitation of contributions for that purpose, from a congregation assembled on Sunday for religious worship, a work of charity?

No man can legally be compelled to contribute towards the erection of a house for public worship, nor to attend or support religious services therein. The statute imposes no such obligation. It however does recognize Sunday as the proper day for the exercise of public worship. It leaves every one free to use the day for that purpose or refrain from such use. It is designed to compel a cessation of all those employments which will interfere with, or interrupt the exercise of religious services, either public or private, on that day. The right to so worship is protected by its penal enactments. Each person has an indefeasible right to worship Almighty God according to the dictates of his own conscience. Each is at liberty to use Sunday for the purpose contemplated by the statute. If he refrains therefrom, he shall not so use the day as to annoy others who may be engaged in religious worship: Johnston *v.* Commonwealth, 10 Harris 102. The purpose of the law is to protect the day for the comfort of those conducting or attending religious worship. Charity is active goodness. The means which long established and common usage of religious congregations show to be reasonably necessary to advance the cause of religion are not forbidden, and may be deemed works of charity within the meaning of the statute. It is not essential that they be purely charitable; it is sufficient if they so far partake of that character as to be recognized by the congregation as part of its active goodness, and are not expressly forbidden by the statute: Commonwealth *v.* Nesbit, 10 Casey 398.

The inclination of this court has long been not to permit a person to set up this law against another person from whom he has received a meritorious consideration, or on whom he has inflicted an injury. It was therefore said in Mohney *v.* Cook, 2 Casey 342, that the law relating to the observance of the Sabbath defines a duty of the citizen to the state and to the state only. It was therefore held that one who had erected an obstruction in a navigable stream, whereby the boat and cargo of another were wrecked on Sunday, could not, in an action for such injury, set up as a defence, that the plaintiff was unlawfully engaged in navigating his boat on that day. So it was

held the hire of a carriage on a Sunday by a son to visit his father created a legal contract, although no reason was shown for visiting him on that day other than flows from a general filial duty and affection: Logan *v.* Mathews, 6 Barr 417. It is not a violation of the Act for a hired domestic servant to drive his employer's family to church on Sunday in the employer's private carriage: Commonwealth *v.* Nesbit, supra. A will executed on Sunday is not void, although, at the time, the testator be in his usual state of good health and live five or six months thereafter: Beitenman's Appeal, 5 P. F. Smith 183.

Contracts for services on Sunday of the preacher, the sexton, the organist, and the singers, are not illegal, although these persons may engage in such employments as a means of livelihood. Their services are in furtherance of the same great charity.

The custom of soliciting contributions on Sunday, from congregations assembled for religious worship is very general, and has existed from an early period of time. With some denominations it may be for a greater variety of objects than with others. Sabbath offerings may be for the incidental expenses of the church; to light and warm the house; to pay the organist and the sexton; to assist the poor; to repair, enlarge, and rebuild the church edifice; to support foreign and domestic missions. The latter often extends to furnishing aid to poorer congregations towards erecting houses of worship. If it be illegal to give or to agree to give for such objects on Sunday, it must be illegal to solicit the giving. We are not aware it has ever been held that the preacher became liable to the penal provisions of the statute by soliciting from the pulpit such contributions, nor any of the officers of the church for taking up the collection. Whether the sum be large or small does not change the principle applicable to the transactions. It is true there is a legal distinction between having given, and agreeing to give; yet inasmuch as we think a subscription towards the erection of a house of public worship is a work of charity, such agreement is not prohibited by the Act of April 22d 1794.

The conclusion at which we have arrived is not in accord with the doctrine assumed in Catlett *v.* Trustees, &c., 62 Ind. 365; but in principle it is in harmony with the rule declared in Flagg *v.* Millburg, 4 Cush. 243; Bennett *v.* Brooks, 9 Allen 118; Doyle *v.* Railroad Co., 118 Mass. 195, and directly sustained in Allen *v.* Duffy, decided last year by the Supreme Court of Michigan, reported in 9 Reporter 646.

The support of religious societies is a charity. It is a giving for the love of God or the love of a neighbor in a broad catholic sense. Whatever is morally fit and proper to be done on Sunday, in furtherance of the great object, is likewise a charity.

[Philips *v.* Commonwealth *ex rel.* James.]

The learned judge therefore erred in ordering a nonsuit and in refusing to take it off.

     Judgment reversed and a procedendo awarded.