## Commonwealth v. Coleman, Appellant.

*Sunday law—Playing of professional base ball—Act of April 22, 1794, 3 Sm. L. 177.*

A professional base ball game conducted in the central part of a large city immediately adjoining a main thoroughfare, is a violation of the Sunday Law of April 22, 1794, 3 Sm. L. 177, although the grounds were separated from the street by a high and close board fence, and although no charge was made for admission, and there was no actual disorder when the game was stopped.

Argued March 2, 1915. Appeal, No. 31, March T., 1915, by defendant, from order of Q. S. Lackawanna Co., Oct. Sessions, 1914, No. 4, dismissing appeal from judgment of a justice of the peace in case of Commonwealth v. Edward J. Coleman. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Appeal from judgment of justice of the peace. Before EDWARDS, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order of the court affirming judgment of justice of the peace.

*Charles P. O'Malley,* for appellant.—The act is a penal statute and must therefore be strictly construed: Com. v. Rapp, 23 Dist. Rep. 145; Com. v. Nesbit, 34 Pa. 398.

Appellant's construction of the act is the true, reasonable construction: Pfoutz v. Penna. Telephone Co., 27 Pa. C. C. R. 609; Johnston v. Com., 22 Pa. 102; Sparhawk v. Union Passenger Ry., 54 Pa. 401; Com. v. Matthews, 152 Pa. 166; Com., ex rel., v. Prison Warden, 11 Dist. R. 45.

*David J. Davis,* City Solicitor, with him *H. M. Streeter,* Asst. City Solicitor, cited: Rheem v. Carlisle Deposit Bank, 76 Pa. 132; Mohney v. Cook, 26 Pa. 342.

OPINION BY ORLADY, J., July 21, 1915:

The disputed facts in this case are as follows:

The defendant is president of the Scranton Base Ball Association, a club of professional base ball players, incorporated under the laws of Pennsylvania, and this club is a member of the New York State League of Base Ball Players. The grounds of the association are located in the central part of the City of Scranton, immediately adjoining one of its main thoroughfares, and from which it is separated by a high and close board fence. The grounds are equipped with stands and a sufficient number of seats for use of the usual patrons of the sport. During the week days an admission fee is charged to the games, score cards are sold or furnished, or voluntary contributions are solicited to cover expenses incident to the game.

The Scranton association scheduled and advertised a game of base ball to be played on its grounds on Sunday, May 17, 1914, between the Scranton club and the Syracuse club of the New York State League. Both were professional clubs, of salaried players. Between 5,000 and 6,000 persons were assembled, and the game was in progress, when it was stopped by the police authorities of

the city, and this defendant was arrested. No fee or charge for admission was charged for this game, and there was no actual disorder when the game was interrupted. Counsel on each side, by record agreement and on oral argument, frankly conceded the facts to be as above stated, and ask for a construction of the Act of April 22, 1794, 3 Sm. L., p. 177; P. & L. Dig. Col. 6889, as applied to the facts of this case.

The defendant was found guilty by a police magistrate of violating this statute and fined $4.00, from which an appeal was allowed by the Court of Quarter Sessions; after a hearing the appeal was dismissed, the court saying: "This case was submitted on its merits. The question involved needs no extended discussion. So long as the Act of 1794 is upon our statute books, the sport or diversion known as base ball cannot be played in Pennsylvania without violating that act of assembly." This statute has remained unchanged for over a century, and while there have been many prosecutions for its violations, the particular offense charged in this proceeding has not been considered by either of our appellate courts.

Its title is as follows: "An Act for the prevention of vice and immorality, and of unlawful gaming, and to restrain disorderly sports and dissipation," and the controlling provision now under consideration is "if any person......shall use or practice any unlawful game, hunting, shooting, sport or diversion whatsoever, on the same day (the Lord's Day, commonly called Sunday), and be convicted thereof, every person, so offending, shall, for every offense forfeit and pay," etc.

Counsel for appellant frankly concedes that "An Act, may be unlawful, not because unlawful in itself, but because of the place where it is done; or because of the time when it is done; or because of the person by whom it is done; or because of the manner in which it is done; or because of the purpose for which it is done. A sport may not be unlawful in itself, but if carried on on Sunday in a noisy manner in a public place, it may thereby

become unlawful, because disorderly, though it may be carried on during the week with as much or even more noise with perfect propriety. It is further admitted that if the game of base ball in question in this case was being carried on in the public highway, or so near a public highway as to interfere with persons properly using the highway, or was being carried on in a disorderly and noisy manner, so as to disturb other persons, or was being carried on in such close proximity to a church or place of worship, that persons engaged in religious worship would be disturbed, that there would have been a proper case within the terms of the statute, even though the same act on a week day would not be unlawful."

However, with these concessions it is earnestly urged that the proper construction to be given this act is, that we must associate with the words sport and diversion, as controlling them, the word—unlawful—so as to make the prohibited sport or diversion an unlawful act, before we can decide the admitted facts of this case to be an offense prescribed by statute.

Keeping in mind the great length of time between this enactment and its application to present conditions, which could not then have been anticipated, the governing thought is its aim and purpose, viz: "To prevent vice and immorality, unlawful gaming, and to restrain disorderly sports and dissipation."

Many cases have been presented for decision in which the charge was doing a worldly employment or business on the Lord's Day, commonly called Sunday, and great learning has been applied to the solution of these vexing problems. The case before us is confined by much closer lines. Had an admission fee been exacted and paid, it is conceded that it would be a case of worldly employment, but the fact that no such fee was paid is not controlling. The assemblage of a great concourse of people on Sunday is always due to some question in which the public is interested, and we cannot overlook the well-known fact that games between professional and salaried

clubs are attended by crowds in proportion to the fame of the clubs or the interest taken in the game in the community. The professional base ball game is a vigorous athletic demonstration conducted by skillfully trained contestants, whose every successful action, or failure, or a mistake of judgment of each participant is critically observed by every witness from the call to close of the game, and each incident invites from spectators exhibitions of approval or of censure. On week days, extreme enthusiasm, excessive noise and occasional physical controversies would not be considered disorderly in the base ball acceptation of that word. Such a game without the clamor of popular applause or criticism of players or umpire would be a remarkably dull and uninteresting exhibition.

Penal statutes must not be construed so strictly as to defeat the obvious intention of the legislature: United States v. Wiltberger, 5 Wheaton, 76. The construction contended for by the appellant would narrow the operation of the law far within what the legislature evidently intended. It is a settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual and not what is productive of absurd or anomalous consequences, or what is impossible or incapable of execution. If in giving to the words of the act their literal or natural meaning the conclusion reached would be unreasonable or absurd, some other meaning within the reasonable scope of the words may be adopted to avoid that result, if it appears that such other meaning may probably have been the one intended: In re Foster's Petition, 243 Pa. 92. In Johnston v. Com., 22 Pa. 102, Justice WOODWARD said, "This act has continued in force since 1794, and while it remains unaltered by the legislature it is not to be frittered away by judicial construction......If we doubted the policy of the statute it would nevertheless be our sworn duty to administer it faithfully, but with a profound conviction of its wisdom and value we are resolutely opposed to a

course of judicial construction, that would cheapen its demands and impair its power for good."

The charge was that the defendant "did manage and conduct this game of base ball which was practiced for sport and diversion" and there cannot be any controversy as to the natural and reasonable tendency of such a concourse of people in the built-up part of a city, on Sunday, to produce noise and disorder. Any such meeting, assembled under such circumstances, according to the opinion of rational men, would certainly, on Sunday, endanger the tranquillity and peace of the neighborhood. The Christian religion, and the sanctity of Sunday as a holy day, is an inseparable part of our fundamental law.

In Com. v. Woelper, 3 S. & R. 50 (1817), the Supreme Court held, "Laws cannot be administered in any civilized government unless the people are taught to revere the sanctity of an oath, and look to a future state of rewards and punishments for the deeds of this life. It is of the utmost importance therefore that they should be reminded of their religious duties at stated times. The invaluable privilege of the rights of conscience, secured to us by the Constitution, was never intended to shelter those persons who, out of mere caprice, would directly oppose those laws, for the pleasure of showing their contempt of the religious opinions of the great mass of the citizens." And we feel that the great body of our citizens have not changed their minds on this subject since the enactment of 1794. With our understanding, that our people profess Christianity, we cannot assume that there is any change in our fundamental law that would convert Sunday into a worldly day. The power of the statute to compel by penal enactments, the quiet and orderly observance of Sunday, so far as cessation from secular pursuits is concerned, and to punish its open violation, cannot be questioned, and it is too well settled to require discussion.

"Any sport or diversion whatsoever" which actually,

or tends to produce disorder on Sunday, so as to disturb the peace of law-abiding citizens of the community, is prohibited by the Act of 1794, which was intended to enable the people at large to devote that day to rest and the worship of God. The playing of base ball on Sunday is not in itself a crime, but it becomes an unlawful act when it interrupts the repose and religious liberty of the community. Unlawful, does not necessarily mean contrary to law; "un" is a preposition and may mean simply "not," and unlawful may properly be applied to an act not authorized by law: McDaniel v. United States, 87 Fed. Repr. 321.

It is not charged that this defendant was engaged in a worldly employment or business, but it is a reasonable and fair inference to hold that these professional, salaried players, in giving an exhibition of their skill on Sunday without charge, to 6,000 persons, were affording them such a diversion as would excite an interest in the sport so as to induce attendance at the games on week days when an admission fee would be charged. The fact that there was no physical outcry or disorder at the time has but slight significance, as the game was stopped as soon as it was started, and the natural and reasonable occasion for outburst had not then arisen.

If the public standards of religious observance of Sunday have changed, the appeal should be made to the legislature and not to the courts, to modify the prohibitions and requirements of this act.

The judgment is affirmed.