## Com. ex rel. Woodruff, Attorney-General, v. American Base Ball Club of Philadelphia.

*Sunday law—Professional base ball—Act of April 22, 1794—Quo warranto—Relator—Attorney-General—Demurrer—Constitutional law—"Sport" —Worldly employment or business—Corporations—Powers.*

1. Conducting on Sunday a game of professional base ball to which an admission is charged violates the Act of April 22, 1794, 3 Sm. Laws, 177.

2. Where a suggestion for a writ of *quo warranto* avers that the Attorney-General is the relator, and an answer is filed denying that the Attorney-General is the "real relator," a demurrer to the answer does not admit the charge that the Attorney-General is not the "real relator."

3. The Attorney-General in filing a suggestion for a *quo warranto* acts on his own judgment, but he may be moved to exercise his discretion by the opinion of others.

4. *Quo warranto* on the suggestion of the Attorney-General is a proper proceeding to determine whether an incorporated base ball club has the right to play base ball on Sunday.

5. The fact that such corporation may exercise its corporate right to play professional base ball on Sunday in some jurisdictions, where such playing is lawful, makes it no less an *ultra vires* act to exercise that charter power in Pennsylvania if such playing is unlawful.

6. A corporation may be ousted from the exercise of powers which it does not have, while at the same time protected in the exercise of its lawful privileges.

7. The Act of April 22, 1794, 3 Sm. Laws, 177, is not so indefinite in its terms as to make it unconstitutional if construed to apply to professional playing of base ball on Sunday.

8. The Act of 1794 does not violate the 14th Amendment of the Constitution of the United States.

9. The fact that base ball was unknown in 1794 is immaterial, inasmuch as a general law applies to all who come within its terms, to new subjects that are created and to new conditions as they arise.

10. The language of the Act of 1794, which prohibits "any unlawful game, hunting, shooting, sport or diversion whatsoever," is not to be construed so as to apply the word "unlawful" to "sport" as well as to "game."

11. The Act of 1794 creates a criminal offence, and it is not necessary to have an actual disturbance or disorderly conduct to violate it.

12. The conducting of a game of professional base ball on Sunday for profit is "worldly employment or business," within the meaning of the Act of 1794.

Demurrer to answer to suggestion for writ of *quo warranto*. C. P. Dauphin Co., Commonwealth Docket, 1926, No. 69.

*George W. Woodruff*, Attorney-General, and *John Robert Jones*, Deputy Attorney-General, for plaintiff.

*John R. Geyer* and *Charles G. Gartling*, for defendant.

HARGEST, P. J., Oct. 28, 1926.—This case arises upon a suggestion by the Attorney-General for a writ of *quo warranto*. An answer has been filed and a demurrer filed to the answer. The question presented is whether the defendant, by conducting on Sunday a game of professional base ball to which an admission fee is charged violates the Act of April 22, 1794, 3 Sm. Laws, 177? We find the following

### Facts.

1. The American Base Ball Club of Philadelphia is a corporation of the State of Pennsylvania, chartered Dec. 24, 1913, pursuant to the act entitled "An act to provide for the incorporation and regulation of certain corporations," approved April 29, 1874, P. L. 73, with a capital stock of $50,000, divided into 1000 shares of a par value of $50 each.

2. The purpose of the respondent corporation is to organize, equip and maintain a team or club for the playing of professional base ball, and for

Com. ex rel. Woodruff, Attorney-General, v. American Base Ball Club of Phila.

such purpose to purchase or lease and maintain a lot or lots of ground, with appropriate buildings thereon.

3. The respondent corporation has organized and maintains a professional base ball club and employs, for stipulated salaries, various persons skilled in playing the game of base ball. The respondent is a member of the American League of Professional Base Ball Clubs. Professional base ball games are arranged and conducted between the teams of said clubs and played by hired professional players in accordance with a regular schedule.

4. The defendant corporation owns base ball grounds known as Shibe Park, in the City of Philadelphia.

5. On Sunday, Aug. 22, 1926, the respondent conducted a game of base ball at said Shibe Park with another team or club of the American League of Base Ball Clubs, for which an entrance fee was charged. The said game of base ball was played without excessive noise or disorder and without any actual breach of the peace, and said respondent intends to hereafter conduct games of base ball on Sunday.

## Discussion.

The respondent contends (1) that the court ought not to take jurisdiction of the case, because (a) the Attorney-General is not the real relator; (b) quo warranto is not the proper remedy for the relief prayed; (2) that the relator is not entitled to relief upon the merits, because (a) to construe the act to include the respondent would make it unconstitutional; (b) the act does not include the respondent, inasmuch as base ball was not known when it was passed; (c) a grammatical construction shows that it is not violating the act, since the respondent is engaged only in conducting a sport; and (d) that it is not doing or performing any worldly employment or business.

We will consider these questions in their order.

(1a). In addition to the facts heretofore found, the defendant's answer avers that the Attorney-General is not the "real relator," but that the real relators on whose behalf these proceedings are instituted are organizations opposed to Sunday base ball and an open Sabbath, and the respondent contends that the Commonwealth has, by demurring to this allegation of the answer, put itself out of court.

There can be no doubt that the forfeiture of franchises or the ouster of supposed privileges can only be effected in a direct proceeding instituted by the Attorney-General for that purpose: Com. v. Allegheny Bridge Co., 20 Pa. 185; Com. v. Phila., Harrisburg & Pitts. R. R. Co., 23 Pa. Superior Ct. 235, 249; Olyphant Sewage Co. v. Olyphant Borough, 196 Pa. 553; Downingtown Gas and Water Co. v. Downingtown, 193 Pa. 255.

It is well settled that a demurrer admits only such facts as are properly pleaded: Manners v. Philadelphia Library Co., 93 Pa. 165; Getty v. Pennsylvania Institution, 194 Pa. 571, 575; Kaufmann v. Kaufmann, 222 Pa. 58, 65; Kurtz v. Railroad Co., 187 Pa. 59, 67.

In Manners v. Philadelphia Library Co., 93 Pa. 165, it is held that "a demurrer does not admit the truth of an averment where the document referred to shows that it is not true." The suggestion in this case shows the Attorney-General to be the relator. The answer avers that he is not the "real relator." There is no distinction in the law between relators and real relators. The Attorney-General avers himself to be the relator, and the answer in this particular denies what the record shows to be the fact. The purpose of an answer is to deny the truth of facts alleged, not to attack the form or sufficiency of a pleading. This averment of the answer does just the

Com. ex rel. Woodruff, Attorney-General, v. American Base Ball Club of Phila.

latter thing. It attacks the sufficiency of the suggestion. It may be that some organizations or persons originally presented this matter to the Attorney-General and induced him to conclude that the public interests required him to proceed. It is a common practice of the Attorney-General's Department, well known to the courts and the profession, for the Attorney-General to hold hearings when an application is made to him to become the relator either in *quo warranto* or in mandamus proceedings, so that he may be able to properly exercise his discretion. When the proceeding is originally inspired in that way, it makes him no less the relator than if he proceeds originally on his own motion. It would be a preposterous doctrine to hold that the Attorney-General could not be moved by the interests of others to exercise his discretion, and just as preposterous to hold that the averment of the chief law officer of the Commonwealth as to his own relation to the case could be attacked in this way. It follows that the demurrer does not admit the truth of the allegations in the answer that the Attorney-General is not the "real relator," inasmuch as it denies the facts shown by the suggestion of the Attorney-General himself.

(1*b*). The question is again raised that *quo warranto* is not the proper remedy, and, therefore, this court has no jurisdiction. We examined that precise question at some length in Com. ex rel. Attorney-General v. Sesqui-Centennial Exhibition Ass'n, 29 Dauphin Co. Reps. 313 [8 D. & C. 77], and have no doubt of the correctness of the conclusion reached in that case. It is not necessary to repeat what we there said, but it is now urged that there is a distinction between that case and this. It is contended that in that case there was a judgment of ouster as to the power claimed, which was not granted, but in the instant case there is an attempt to oust the respondent from the exercise of a power granted because its exercise is unlawful; that the respondent's charter right is to play professional base ball, which is lawful on every day of the week, and clearly exists in the company for seven days in the week in jurisdictions where the exercise of the power is not prohibited by law. This is a refinement of argument to which we cannot lend ourselves. The Sesqui-Centennial Association had a right to exercise its powers for six days a week, but, as we concluded, not on Sunday. The fact that the respondent in this case may exercise its corporate right to play professional base ball on Sunday in some jurisdictions where such playing is lawful makes it no less an *ultra vires* act to attempt to exercise that charter power in Pennsylvania, if such playing is unlawful. It is not necessary for us to repeat the cases cited in the Sesqui-Centennial case to show that a corporation may be ousted from the exercise of powers which it does not have, while at the same time be protected in the exercise of its lawful privileges.

(2). The Act of 1794 is entitled "An act for the prevention of vice and immorality and of unlawful gaming, and to restrain disorderly sports and dissipation." The 1st section provides, in part, that "if any person shall do or perform any worldly employment or business whatsoever on the Lord's Day, commonly called Sunday, works of necessity and charity only excepted, or shall use or practice any unlawful game, hunting, shooting, sport or diversion whatsoever, on the same day, and be convicted thereof, every such person" shall be fined.

(2*a*). It is contended that the Act of 1794 is wanting in a definiteness of statement which is essential to the validity of a penal statute, and that the court should not enlarge by construction that which is ambiguous.

It is our duty to ascertain the legislative intent and to apply any proper test which will enable us to arrive at such a determination. Grammatical

construction, the mischief to be remedied, the prior state of the law, are all matters which the court should consider in arriving at the proper construction. Not every part of a penal statute is to be strictly construed. "The courts may put a literal construction on a penal clause and a liberal construction on a remedial clause in the same statute:" Com. v. Shaleen, 215 Pa. 595. This statute was passed in the exercise of the police power; a power that has not been surrendered by the State, and the exercise of which is entirely within the control of the State, unless it clearly comes into conflict with some provisions of the Federal Constitution: Mugler v. Kansas, 123 U. S. 623. We cannot agree that this statute is so indefinite as to make it unconstitutional if construed to apply to the respondent.

It is contended, however, that this act of assembly is unconstitutional as in conflict with the 14th Amendment of the Constitution of the United States, in that it denies to the respondent the equal protection of the laws, if the literal interpretation of the statute is adopted, which forbids all sports and diversions whatsoever on Sunday. This contention is tantamount to saying that a statute cannot constitutionally prohibit all sports and diversions on a Sunday; that it could only prohibit such as constitute an actual disturbance or breach of the peace, and that the legislature could not determine that sports and diversions are likely to disturb the quiet enjoyment of the Lord's Day. The jealousy with which the courts of this State have protected this act is shown in the cases of Com. v. Wolf, 3 S. & R. 48; Specht v. Com., 8 Pa. 312; Sparhawk v. Union Passenger Ry. Co., 54 Pa. 401; Johnston v. Com., 22 Pa. 102; Com. v. Coleman, 60 Pa. Superior Ct. 380; Com. v. Rapp, 23 Dist. R. 145.

The courts of this country have settled, beyond question, that "this is a Christian nation" (Holy Trinity Church v. United States, 143 U. S. 457, 471), and that "the Christian religion and the sanctity of Sunday as a holy day is an inseparable part of our fundamental law:" Com. v. Coleman, 60 Pa. Superior Ct. 380, 385; Updegraph v. Com., 11 S. & R. 394, 400; Vidal v. Girard's Executors, 2 Howard, 127, 198. The Act of 1794 applies to all persons, whether Christian, Mohammedan, Pagan, Jew or Gentile, and in Com. v. Wolf, 3 S. & R. 48, and Specht v. Com., 8 Pa. 312, its constitutionality was sustained as against the Jew who kept the seventh day as his Sabbath. Applying to all alike, we see no room for the contention that it violates the constitutional provision for the equal protection of the law.

Similar acts of other states have been held not to violate any Federal constitutional provisions: Petit v. Minnesota, 177 U. S. 164; Hennington v. Georgia, 163 U. S. 299.

(2b). It is contended that the act cannot properly be so construed as to include base ball within its inhibition, because base ball was not known in 1794. Laws are prospective. A general law applies to all who come within its terms, to new subjects that are created and to new conditions as they arise. Opinion by Walling, J., in Com. v. Quaker City Cab Co., May Term, 1926, No. 24 (287 Pa. 161). See, also, 36 Cyc., 1235; 25 Ruling Case Law, "Statutes," § 24. Sunday newspapers were not known in 1794, yet in Com. v. Matthews, 152 Pa. 166, their sale on Sunday was held to come within the prohibition of the act; and in Knight v. Press Co., 227 Pa, 185, a contract to distribute newspapers on Sunday was held to involve a worldly employment prohibited by the act. The contention that the proper construction of the act would not prohibit base ball, because unknown at the time of its passage, is not sound.

Com. ex rel. Woodruff, Attorney-General, v. American Base Ball Club of Phila.

(2c). It is argued that the respondent is engaged in a sport, and that a proper and grammatical construction of the statute is that such a sport must be an otherwise unlawful sport in order to violate the act.

The language of the act prohibits. "any unlawful game, hunting, shooting, sport or diversion whatsoever." It is contended that, applying the rules of grammar, the adjective "unlawful" must be taken as referring to "hunting, shooting, sport and diversion" as well as to "game." So that, thus construed, it is only an unlawful hunting, an unlawful shooting, an unlawful diversion, the practice of which on Sunday is prohibited.

The general rule is: "The language of an act is to be read in the first instance in accordance with the ordinary rules of grammar, but the grammatical sense must be modified in accordance with plain legislative intention, so far as to avoid inconsistency, absurdity or repugnancy:" 29 Am. & Eng. Ency. of Law (2nd ed.), "Statutes," 612; Dame's Appeal, 62 Pa. 417, 422; Gyger's Estate, 65 Pa. 311; Fisher v. Connard, 100 Pa. 69. To apply the strict grammatical construction to this act of assembly leads not only to inconsistencies, but makes the language of the act just quoted meaningless and superfluous. As was said by Ryan, P. J., in Com. v. Rapp, 23 Dist. R. 145, 146: "Why prohibit by this act the practice on Sunday of those things already prohibited altogether by some other statute?" Referring to hunting, it is unlawful to hunt certain birds and game in the closed season, and it is entirely lawful to hunt them in the open season. If we adopted the construction contended for, and there were no other statute against hunting on Sunday, it would permit hunting on Sunday in the open season because it is lawful, and prohibit the hunting on Sunday in the closed season. Such Sunday observance would be a farce. To pursue the subject further, what games, sports and diversions are unlawful, aside from this act? Very few. Therefore, to adopt this contention is to hold that the legislature did a vain thing in the use of these words in the act. We must not put such a construction upon it, and, therefore, it follows that it is unlawful to engage in any hunting, shooting, sport or diversion on Sunday. Of course, this must be interpreted in a reasonable sense and not to apply to one who takes his family into the country on Sunday to enjoy the beauties of nature, even though that may be considered a diversion.

The construction we have arrived at is the one which the courts have already declared. In Com. v. Rapp, 23 Dist. R. 145, it is held that the playing of base ball in a public park on Sunday, where there was no admission fee charged, is a violation of the statute.

In Com. v. Coleman, 60 Pa. Superior Ct. 380, 384-386, Orlady, J., said:

"It is a settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual and not what is productive of absurd or anomalous consequences, or what is impossible or incapable of execution. If in giving to the words of the act their literal or natural meaning the conclusion reached would be unreasonable or absurd, some other meaning within the reasonable scope of the words may be adopted to avoid that result, if it appears that such other meaning may probably have been the one intended: In re Foster's Petition, 243 Pa. 92. In Johnston v. Com., 22 Pa. 102, Justice Woodward said: 'This act has continued in force since 1794, and while it remains unaltered by the legislature, it is not to be frittered away by judicial construction. . . . If we doubted the policy of the statute, it would, nevertheless, be our sworn duty to administer it faithfully, but with a profound conviction of its wisdom and value we are resolutely opposed to

Com. ex rel. Woodruff, Attorney-General, v. American Base Ball Club of Phila.

a course of judicial construction that would cheapen its demands and impair its power for good.' . . .

" 'Any sport or diversion whatsoever' which actually or tends to produce disorder on Sunday, so as to disturb the peace of law-abiding citizens of the community, is prohibited by the Act of 1794, which was intended to enable the people at large to devote that day to rest and the worship of God. The playing of base ball on Sunday is not in itself a crime, but it becomes an unlawful act when it interrupts the repose and religious liberty of the community. Unlawful does not necessarily mean contrary to law; 'un' is a preposition and may mean simply 'not,' and unlawful may properly be applied to an act not authorized by law: McDaniel v. United States, 87 Fed. Repr. 324.

"It is not charged that this defendant was engaged in a worldly employment or business, but it is a reasonable and fair inference to hold that these professional, salaried players, in giving an exhibition of their skill on Sunday without charge to 6000 persons, were affording them such a diversion as would excite an interest in the sport so as to induce attendance at the games on week-days, when an admission fee would be charged."

It is contended that there was no unnecessary noise or disturbance, and that only those sports which are accompanied by noise or disturbance are within the act, because they would be unlawful. Com. v. Coleman, 60 Pa. Superior Ct. 380, 386, answers this contention. It is there said: "The fact that there was no physical outcry or disorder at the time has but slight significance, as the game was stopped as soon as it started, and the natural and reasonable occasion for outburst had not then arisen." In Com. v. Eyre, 1 S. & R. 347, 350, Tilghman, C. J., said, in effect, that the violation may consist "of work without noise or disorder." This contention is also answered by considering the purpose of this act. In Dale v. Knepp, 98 Pa. 389, 392, it is said: "It (the statute), however, does recognize Sunday as the proper day for the exercise of public worship. It leaves every one free to use that day for that purpose or refrain from such use. It is designed to compel a cessation of all those employments which will interfere with or interrupt the exercise of religious services, either public or private, on that day. The right to so worship is protected by its penal enactments. Each person has an indefeasible right to worship Almighty God according to the dictates of his own conscience. Each is at liberty to use Sunday for the purpose contemplated by the statute. If he refrains therefrom, he shall not so use the day as to annoy others who may be engaged in religious worship: Johnston v. Com., 22 Pa. 102. The purpose of the law is to protect the day for the comfort of those conducting or attending religious worship."

In Com. v. Nesbit, 34 Pa. 394, 407, it is said: "By our Sunday laws, and our other laws against vice and immorality, we do not mean to enforce religion; we admit that to be impossible. But we do mean to protect our customs, no matter that they may have originated in our religion; for they are essential parts of our social life. Instinctively, we defend and protect them. It is mere social self-defence, and not a matter of choice."

In Johnston v. Com., 22 Pa. 102, 115, it is said: "It would be a small boon to the people of Pennsylvania to declare their indefeasible right to worship God according to the dictates of their consciences, amid the din and confusion of secular employments, and with desecrations on every hand of what they conscientiously believe to be hallowed time. These statutes were not designed to compel men to go to church or to worship God in any manner inconsistent with personal preferences; but to compel a cessation of those employments which are calculated to interfere with the rights of those who choose to assem-

ble for public worship. The day was set apart for a purpose, and the penal enactments guard it, but they leave every man free to use it for that purpose or not. If he wish to use it for the purpose designed, the law protects him from the annoyance of others—if he do not, it restrains him from annoying those who do so use it. Thus the law, without *oppressing* anybody, becomes auxiliary to the rights of conscience."

Moreover, the Act of 1794 creates a criminal offence and it is not necessary to have an actual disturbance or disorderly conduct to violate it. In Com. v. Eyre, 1 S. & R. 347, 351, and in Com. v. Wolf, 3 S. & R. 48, 49, the violation of the act is distinctly called a crime, and in Com. v. Shields, 50 Pa. Superior Ct. 194, 203, Rice, P. J., in a very able opinion defining "crime," refers to this act as constituting a crime. See, also, Com. v. Coleman, 60 Pa. Superior Ct. 380; Com. v. Rapp, 23 Dist. R. 145; Com. v. Jeandell, 2 Grant, 506, 510, 512; Com. v. Teamann, 1 Phila. 460, 461; Com. v. Foster, 28 Pa. Superior Ct. 400, 402. In Com. v. Egler, 43 Pa. C. C. Reps. 90, 24 Dist. R. 939, it is held that "a game of base ball is a 'sport or diversion' and a violation of the Act of 1794, even though it were intended for a charitable purpose," if played on Sunday. We, therefore, conclude that, in view of the intention of this act as declared by the courts, the provision against practicing any sport on Sunday was violated by the respondent on Aug. 22, 1926, and would be violated by conducting games on Sunday, such as the respondent proposes to do.

(2*d*). Furthermore, in our opinion, the conducting of a game of base ball as it is conducted by the respondent is "a worldly employment or business." This corporation is not chartered for religious or charitable purposes. It is a corporation of the second class. It has 1000 shares of stock at a par value of $50 each. It is organized to maintain a professional base ball club and arrange games of professional base ball with other clubs of a professional base ball league. The game itself is a sport (Com. v. Egler, 43 Pa. C. C. Reps. 90, 24 Dist. R. 939), but the maintaining of the corporation is a business. The employment of its book-keepers, of its gate-keepers, of its grounds-keepers; the arrangement of the many details, the payment of the salaries, constitute a business. It is not a work of necessity or charity, and, in so far as it is a business at all, it is a worldly business. That it is a business is intimated but not decided, because the question was not raised, by Judge Orlady in Com. v. Coleman, 60 Pa. Superior Ct. 380, 386.

We are referred to the case of Federal Club v. National League, 259 U. S. 200, as authority for the proposition that the respondent is not engaged in business, but is conducting a sport. This case does not sustain any such contention. It holds that arranging of base ball games between the clubs of two leagues is not interstate commerce and does not violate the Anti-Trust Acts. But it does not hold that the clubs are not engaged in any business. The very language of the syllabus is (italics ours) : "The *business* of providing public base ball games for profit . . . is not interstate commerce," and Mr. Justice Holmes, in delivering the opinion, said (page 208) : "The '*business*' is giving exhibitions of base ball, which are purely state affairs. It is true that, in order to attain for these exhibitions the greatest popularity that they have achieved, competitions must be arranged between clubs from different cities and states. But the fact that in order to give the exhibitions the leagues must induce free persons to cross state lines and must arrange and pay for their doing so, is not enough to change the character of the *business*."

We cannot escape the conclusion that the respondent is engaged in a worldly business.

For the foregoing reasons we come to the following conclusions of law:

Com. ex rel. Woodruff, Attorney-General, v. American Base Ball Club of Phila.

1. The demurrer to the answer which avers that the Attorney-General is not the real relator does not admit the truth of such averment, because it is not a proper pleading.

2. *Quo warranto* is the proper remedy in this case for the relief prayed.

3. The Act of 1794 includes base ball within its terms, although such game was not known at the time of the passage of the act.

4. The playing of base ball for which an admission fee is charged in the City of Philadelphia by the respondent, on Sunday, is a violation of the act.

5. The respondent is engaged in a worldly employment or business.

6. The respondent must be ousted from any right, privilege or authority to maintain or conduct any game of base ball in the City of Philadelphia on Sunday.

7. The demurrer to the answer of the respondent must be sustained.

*Order.*—Now, Oct. 28, 1926, the demurrer of the relator to the answer of the respondent is hereby sustained and it is hereby adjudged, ordered and decreed that the American Base Ball Club of Philadelphia be ousted from any right, privilege or authority to maintain or conduct, upon its grounds in the City of Philadelphia, any game of professional base ball on the Lord's Day, commonly called Sunday; that the respondent pay the costs of this proceeding. Exception to the respondent.

From Homer L. Kreider, Harrisburg, Pa.